UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JUAN PASTUIZACA,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                           22-CV-5561 (MKB)

              v.

MIHWA JO CORP d/b/a NOODLE FLOWER,
SOONYOUNG CHO, and FRANKIE JOE,

                              Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Juan Pastuizaca commenced the above-captioned action on September 16, 2022,

against Defendants Mihwa Jo Corporation, doing business as Noodle Flower, Soonyoung Cho,

and Frankie Joe, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA"), the New York Labor Law § 650 *et seq.* ("NYLL"), New York State Human Rights

Law, NY Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law,

N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").  (Compl., Docket Entry No. 1.)

        Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure as to Plaintiff's exempt status under the FLSA and NYLL and Plaintiff's spread-

of-hours and wage notice and statement claims under the NYLL.  Plaintiff cross-moved for

summary judgment on the same claims.[1]  For the reasons discussed below, the Court denies

---

[1]  (Defs.' Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 23; Defs.' Mem. in Supp. of
Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 23-3; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"),
Docket Entry No. 28; Pl.'s Mot. for Partial Summ. J. ("Pl.s' Mot."), Docket Entry No. 31; Def.'s
Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), Docket Entry No. 35; Pl.'s Reply to Def.'s Opp'n ("Pl.'s
Reply"), Docket Entry No. 36.)  Neither party moved for summary judgment as to Plaintiff's
NYSHRL or NYCHRL claims.  The Court does not address those claims or related facts.

Defendant's motion for summary judgment, and grants Plaintiff's cross-motion for summary judgment in part and denies it in part.

## I.   Background

The following facts are undisputed unless otherwise noted.[2]

### a.   Factual background

#### i.   The parties

Plaintiff worked for Defendants for over ten years.[3]  (Defs.' 56.1 Resp. ¶¶ 1, 2.)  The parties do not agree as to the exact time period, but Plaintiff stated that he worked for Defendants from some time in 2007 to August of 2021, (Pl.'s 56.1 ¶ 2), and Defendants' pay records show that they employed Plaintiff from at least September 18, 2016 to August 8, 2021.  (Defs.' Pay Records 1–7, annexed to Pl.'s Decl. as Ex. 3, Docket Entry No. 27-3.)  Mihwa Jo Corp. is a sole proprietorship of Mihwa Jo.[4]  (Defs.' 56.1 ¶ 1.)  Mihwa Jo Corp. operates Noodle Flower, a restaurant, flower shop, and bulk sauce producer located in Queens, New York.  (Pl.'s 56.1 Resp.

---

[2]  (Defs.' 56.1 Stmt. ("Defs.' 56.1"), Docket Entry No. 23-2; Pl.'s Resp. to Defs.' 56.1 ("Pl.'s 56.1 Resp."), Docket Entry No. 29; Pl.'s 56.1 Counterstmt. ("Pl.'s 56.1"), Docket Entry No. 29; Defs.' Resp. to Pl.'s 56.1 ("Defs.' 56.1 Resp."), Docket Entry No. 34.)

[3]  Defendants have only submitted Plaintiff's pay records from September 18, 2016 to August 8, 2021, (Defs.' Pay Records 1–7, annexed to Pl.'s Decl. as Ex. 3, Docket Entry No. 27-3), but contend that this does not mean that they do not have records for Plaintiff's entire employment period.  Because the applicable statute of limitations under the NYLL is six years, and Plaintiff filed this action on September 16, 2016, Defendants' records cover the entire period of Plaintiff's employment that is relevant to the disputes in this case.  NYLL § 198(3) ("[A]n action to recover upon a liability imposed by this article must be commenced within six years.").

[4]  Although Plaintiff named "Mihwa Jo Corp." as the Defendant, Frankie Joe testified that the company shares his sister's name, Mihwa Jo.  (F. Joe Dep. 17:24–18:2, annexed to Defs.' 56.1, Docket Entry No. 23-2 ("[My sister's name is] Mihwa Jo. . . . [T]he company's name is Mihwa Jo, because it's a sole proprietorship.").)  For consistency, the Court refers to "Mihwa Jo Corp.," which is how the sole proprietorship is identified in caption of the Complaint.

¶ 1; Defs.' 56.1 Resp. ¶ 1.)  Cho and Joe worked at Noodle Flower.  (Pl.'s 56.1 Resp. ¶ 1.)

Plaintiff worked at Noodle Flower and at another business Defendants owned.[5]  (*Id.*)

### ii.   Plaintiff's job duties

Plaintiff worked for Defendants six days per week and had a variety of duties at Noodle

Flower.  (Defs.' 56.1 Resp. ¶¶ 3–4.)  He spent most of his time at the flower shop from March

through August, and about seventy percent of his time at the restaurant and thirty percent at the

flower shop from September to February.  (*Id.* ¶ 20; Pl.'s 56.1 Resp. ¶ 77.)  Cho was Plaintiff's

manager and delegated many responsibilities to Plaintiff because Cho did not speak English and

was based in Manhattan.  (Pl.'s 56.1 Resp. ¶¶ 54, 67.)  Cho referred to Plaintiff as the "King"

and Plaintiff referred to Cho as his "boss."  (*Id.* ¶ 63; Defs.' 56.1 Resp. ¶ 25.)

The parties agree that Defendants paid Plaintiff more than the minimum salary

requirement for exemption status under the FLSA and NYLL.  (Pl.'s 56.1 Resp. ¶ 78.)  When

Plaintiff began working for Defendants, Defendants paid him $1,100 per week, and paid other

employees $400 per week.  (*Id.* ¶ 57.)  Eventually, Defendants increased Plaintiff's weekly

salary to $1,300, and Defendants paid Plaintiff by two checks: one in the amount of $500 and

one in the amount of $800.  (Pl.'s 56.1 ¶ 14; Defs.' 56.1 Resp. ¶ 13.)  Defendants did not pay

Plaintiff overtime when he worked more than forty hours per week, and his paystubs did not

show an hourly or overtime rate.  (Defs.' 56.1 Resp. ¶¶ 7, 14.)  Defendants permitted Plaintiff to

take days off and to leave work early, although Plaintiff notes that he was not paid for time off.

(Pl.'s 56.1 Resp. ¶ 34.)  Plaintiff's schedule was different than Chef Manuel Quito's, who

---

[5]  Defendants use different spellings of their names.  Defendants refer to their restaurant
and flower shop as "Noodles and Flowers," Defendant "Soonyoung Cho" as "Soonyoung Jo,"
and to Defendant "Frankie Joe" as "Seung Hoon 'Frank' Jo," (Defs.' Mem. 4), and "Seung Hoo
Jo."  (*See generally* F. Joe Dep.)  For consistency, the Court refers to the parties' names as
identified in the caption of the Complaint.

Defendants paid on an hourly basis. (*Id.* ¶ 36.)

Plaintiff's job responsibilities included buying and preparing food, selling flowers, gardening, making deliveries, and minor handyman tasks. (Defs.' 56.1. Resp. ¶ 18.) Plaintiff had access to Noodle Flower's storage area, the flower shop, and the company cars. (Pl.'s 56.1 Resp. ¶ 31.) He worked with Cho to purchase supplies for Noodle Flower. (*Id.* ¶¶ 66, 70; Defs.' 56.1 Resp. ¶ 26.) Plaintiff listed himself as a "manager" in his loan application to purchase his home. (Pl.'s 56.1 Resp. ¶ 71.) Defendants stated that Plaintiff identified himself as a "manager" in a Violation Order from the New York Fire Department, but Plaintiff denied that "manager" was in his handwriting. (*Id.* ¶ 72.)

Plaintiff spent about twenty-seven hours a month involved in making Noodle Flower's bulk sauce and would instruct other employees on how to make the sauce. (*Id.* ¶ 65; Defs.' 56.1 Resp. ¶ 23.) He also sent out invoices for the sale of the sauce to H-Mart. (Pl.'s 56.1 Resp. ¶ 20; Defs.' 56.1 Resp. ¶ 21; J. Pastuizaca Dep. 58:14–18, annexed to Pl.'s Decl. as Ex. 2, Docket Entry No. 27-2.) However, Chef Quito supervised the kitchen staff. (Defs.' 56.1 Resp. ¶¶ 34, 38.) Plaintiff did not regularly cook in the restaurant but covered for Chef Quito when he was absent, and occasionally helped with plating and serving tables when there were staff shortages. (*Id.* ¶ 22; Pl.'s 56.1 Resp. ¶ 76.) He did not share tips with the servers because he was not primarily a server. (Pl.'s 56.1 Resp. ¶ 75.) Plaintiff did not have any influence over setting the restaurant's prices, designing the restaurant's décor, or responding to customer complaints. (Defs.' 56.1 Resp. ¶ 40.)

Cho asked Plaintiff to evaluate another employee's performance, (Pl.'s 56.1 Resp. ¶ 68.), and Plaintiff also sometimes offered his opinion on other employees' work. (Defs.' 56.1 Resp. ¶ 28.) If employees forgot to clock in to work, Plaintiff would notify Joe regarding the time and

4

date that the employee clocked in.  (Pl.'s 56.1 Resp. ¶ 6.)  Other employees would also sometimes call Plaintiff to inform him when they were not coming in to work.  (*Id.* ¶ 47.)

### b.  Procedural history

On September 16, 2022, Plaintiff commenced this action.  (Compl.)  By order dated October 14, 2022, then-Magistrate Judge Ramon E. Reyes, Jr. referred the case to mediation. (Order and Mediation Referral in Action Under FLSA & NYLL, Docket Entry No. 10.)  The parties attempted mediation on December 16, 2022, which was unsuccessful, and engaged in fact discovery, which was completed in January of 2024.  (Status Report, Docket Entry No. 11; Letter by Juan Pastuizaca, Docket Entry No. 18.)

On March 11, 2024, Defendants moved for summary judgment as to Plaintiff's FLSA and NYLL overtime claims, the NYLL spread-of-hours claim, and the NYLL failure to notify claim pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Defs.' Mot.)  Plaintiff cross-moved on the same claims.  (Pl.'s Mot.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a

genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021)

(quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). A genuine issue of fact

exists when there is sufficient "evidence on which the jury could reasonably find for the

[nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere

existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The

court's function is to decide whether, "after resolving all ambiguities and drawing all inferences

in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v.

N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing

*Anderson*, 477 U.S. at 248; and then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127,

129 (2d Cir. 2013)).

### b. FLSA and NYLL overtime claims

Defendants argue that there is no dispute of material fact that Plaintiff was an exempt

employee and therefore not entitled to overtime pay. (Defs.' Mem. 4.) They argue that they paid

Plaintiff the minimum salary requirement to qualify for exempt status under the FLSA and the

NYLL, except for four months in 2021 when Noodle Flower was closed. (*Id.* at 8–9.)

Defendants also contend that Plaintiff was a manager, and they left Plaintiff to "manage both the

Restaurant, the Flower shop and the sauce-making business and left all decisions involving these

two businesses to the Plaintiff's complete discretion and judgment." (*Id.* at 7.)

Plaintiff argues that he was not an exempt employee. In support, he argues that although

his minimum salary was higher than that required for exempt status under the FLSA and NYLL,

it is insufficient to qualify him as an exempt employee under the salary basis test. (Pl.'s Opp'n

12.) He also contends that his work was primarily manual rather than managerial, (*id.* at 13–16),

and that he did not maintain discretion over significant matters, (*id.* at 17–18), including

directing the work of other employees or hiring and firing employees, (*id.* at 15–16).

6

The FLSA and NYLL "require[] employers to pay all employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533–34 (2d Cir. 2016) (citing 29 U.S.C. §§ 206–07; N.Y. Lab. Law § 652); *see also Shanfa Li v. Chinatown Take-Out, Inc.*, 812 F. App'x 49, 52 (2d Cir. 2020) ("Under the FLSA and the NYLL, employers must pay a wage premium of one-and-one-half times the regular rate for hours worked in excess of forty per week." (citing 29 U.S.C. § 207(a)(1) and N.Y. Comp. Codes R. & Regs. tit. 12 § 14-2-2)); *Domenech v. Party Auth., Inc.*, 653 F. App'x 26, 27 (2d. Cir. 2016) (similar). Certain categories of employees, however, are exempt from the FLSA's overtime requirements. *See* 29 U.S.C. § 213. These include employees who work in an "executive" capacity or employees who work in an "administrative" capacity. *Id*. § 213(a)(1); 29 C.F.R. § 541.101; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *Scott v. Chipotle Mexican Grill, Inc*., 954 F.3d 502, 510 (2d Cir. 2020) ("[T]he FLSA exempts from the overtime requirement 'employee[s] employed in a bona fide executive [or] administrative . . . capacity.'" (second and third alterations in original) (citing 29 U.S.C. § 213(a)(1))), *cert. dismissed*, 142 S. Ct. 639 (2021). Because these exemptions are "substantially similar" in scope under the NYLL, the court considers them together.[6] *Tamayo v. DHR Rest. Co*., No. 14-CV-9633, 2017 WL 532460, at *5 & n.5 (S.D.N.Y. Feb. 3, 2017) ("The NYLL has a substantially similar overtime provision with an analogous exception for executives."); *see Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012)

---

[6] Like the FLSA, the NYLL "mandates overtime pay and applies the same exemptions as the FLSA." *Reiseck v. Universal Commc'ns of Mia., Inc*., 591 F.3d 101, 105 (2d Cir. 2010), *abrogated on other grounds*, *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018). Therefore, the Court discusses the exemptions together. *See Ramos v. Baldor Specialty Foods, Inc*., 687 F.3d 554, 556 n.1 (2d Cir. 2012) (discussing only FLSA exemptions and not engaging in a separate analysis for NYLL claims because they "fail for the same reasons as the[] FLSA claims").

(treating FLSA and NYLL executive and administrative exemptions as functionally equivalent); *Sethi v. Narod*, 974 F. Supp. 2d 162, 183–84 (E.D.N.Y. 2013) (stating that "[t]he NYLL also provides exemptions for some employees similar to the FLSA," and administrative exemptions are "substantially similar" under both statutes).

The Supreme Court has recently explained that an employee is a "bona fide executive" under the FLSA if their employment satisfies each of three distinct tests. *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44–45 (2023). The first is the "'salary basis' test," which asks if an employee "receives a 'predetermined and fixed salary' — one that does not vary with the precise amount of time he works." *Id.* at 45 (quoting 84 Fed. Reg. 51230 (2019)). The second test, the "'salary level' test . . . asks whether that preset salary exceeds a specified amount." *Id.* Finally, the third "duties test" asks if the employee carries out certain responsibilities, namely, "managing the enterprise, directing other employees, and exercising power to hire and fire." *Id.*; *see also* 29 C.F.R. § 541.100(a)(2)-(4)*.*

An employee may also be classified as an exempt employee if they work in an administrative capacity. The administrative exemption requires an employee to "satisfy both a duties requirement and a salary requirement." *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 148 (2d Cir. 2013); *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 161 (2d Cir. 2008) (holding that an administrative employee under the FLSA must satisfy the "duties" and "salary-basis" tests). The administrative exemption is substantially similar to the executive exemption and the language governing the "salary basis" and "salary level" tests in both administrative regulations is identical. 29 C.F.R. § 541.100(a)(1) ("The term 'employee employed in a bona fide executive capacity' . . . shall mean any employee . . . [c]ompensated on a salary basis at not less than the level set forth in § 541.600"); *id.* § 541.200(a)(1) ("The term 'employee employed in a bona fide administrative capacity' . . . shall mean any employee . . . [c]ompensated on a salary or fee basis

8

at not less than the level set forth in § 541.600.").[7]  The administrative exemption's "duties test" differs from the executive exemption in that it asks whether an employee's "primary duty" is either "non-manual work directly related to the management" or operations of the business or requires "the exercise of discretion and independent judgment with respect to matters of significance."  *Id.* § 541.200(a)(2)-(3).

While the Second Circuit previously instructed courts to "narrowly construe[]" FLSA exemptions "because the FLSA is a remedial act," *Ramos*, 687 F.3d at 558 (alteration omitted) (citations and internal quotation marks omitted), the Supreme Court and the Second Circuit have more recently instructed courts to give these exemptions "a fair reading" as they are "as much a part of the FLSA's purpose as the overtime-pay requirement." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) (citing *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)); *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 128–29 (2d Cir. 2020) ("[T]he Supreme Court characterized this 'narrow-construction principle' as 'flawed,' as it mistakenly presumes 'that the FLSA pursues its remedial purpose at all costs,' notwithstanding that the FLSA 'exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement.'  As a result, the Supreme Court instructed that we 'have no license to give the exemption[s] anything but a fair reading.'" (quoting *Encino Motorcars*, 584 U.S. at 89)); *Schwartz v. City of New York*, No. 19-CV-5204, 2021 WL 4392051, at *6 (S.D.N.Y. Sept. 24, 2021).  The "employer bears the

---

[7]  The salary basis level set forth in 29 C.F.R. § 541.600 was $455 prior to January 1, 2020; $684 prior to July 1, 2024; and is currently $844 per week.  *See* 29 C.F.R. § 541.600(a).  In addition, the salary basis level for small employers of ten or fewer employees set forth in the New York Labor Law was $787.50 on and after December 31, 2016; $900 on and after December 31, 2017; $1,012.50 on and after December 31, 2018; and $1,125 on and after December 31, 2019.  N.Y. Comp. Codes R. & Regs. tit. 12 §§ 142-2.14(c)(4)(i)(e)(1)(ii), 2.14(c)(4)(ii)(d)(1)(ii).  The Court uses the prevailing rate at the time of Plaintiff's employment.  *See, e.g.*, *Panora v. Deenora Corp*, 467 F. Supp. 3d 38, 41 n.3 (E.D.N.Y. 2020) (recognizing the increase of the salary threshold from $455 to $684 per week, but applying $455 because it was the salary threshold at the time of the plaintiff's employment).

burden of proving that its employees fall within an exempted category of the Act." *Ramos*, 687 F.3d at 558 (quoting *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)); *Vasquez v. MobileShack, Inc.*, No. 19-CV-10371, 2023 WL 4034932, at \*6 (S.D.N.Y. June 16, 2023) (holding in a motion for summary judgment that the "employer bears the burden of proving that its employees fall within an exempted category of the Act"), *report and recommendation adopted*, No. 19-CV-10371, 2023 WL 4421872 (S.D.N.Y. July 10, 2023).

Whether an employee is exempt from FLSA overtime coverage "is a mixed question of law and fact." *Scott*, 954 F.3d at 511; *see also Ramos*, 687 F.3d at 558 (quoting *Myers v. Hertz Corp*., 624 F.3d 537, 548 (2d Cir. 2010)).  "The question of how the employees spent their working time is a question of fact.  The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Scott*, 954 F.3d at 511 (quoting *Pippins v. KPMG, LLP*, 759 F.3d 235, 239 (2d Cir. 2014)).

The Court considers whether there is a genuine dispute of material fact as to Plaintiff's executive or administrative exemption status under the FLSA and the NYLL.  The Court first addresses the weeks of Plaintiff's employment where his wages did not meet the minimum requirement under the NYLL to be exempt from overtime pay and concludes that Plaintiff was not exempt for those weeks of his employment and is entitled to summary judgment as to his non-exempt status for those weeks.  The Court then considers the remaining overtime claims under the FLSA and the NYLL and concludes that there are genuine issues of material fact as to Plaintiff's exempt status.

### i. Plaintiff was not exempt under the NYLL for the eighteen weeks between September 2019 and June 2021 when he was paid less than the NYLL's minimum salary required for exempt employees

Defendants' pay records show that while Plaintiff was always paid at least the prevailing weekly minimum required by the FLSA, there were at least eighteen weeks between September

of 2019 and June of 2021 when Plaintiff was not paid the minimum required for exempt employees under the NYLL. (Defs.' Pay Records 5–7; J. Pastuizaca Timecards, annexed to Defs.' 56.1 Resp. as Ex. B, Docket Entry No. 34.) For twelve of those weeks between January 31, 2021 and April 18, 2021, Defendants' pay records indicate that Noodle Flower was "closed down," but Plaintiff continued working for and was paid by BAP JIP LLC,[8] Defendants' bulk sauce producing company. (Defs.' Pay Records 7.)

The burden to establish an employee's exempt status is on the employer. *Ramos*, 687 F.3d at 558. The NYLL provides that an exempt employee must be "paid for his services a salary . . . of not less than . . . $1,012.50 per week on and after December 31, 2018; [and] $1,125.00 per week on and after December 31, 2019." N.Y. Comp. Codes R. & Regs. tit. 12 §§ 142-2.14(c)(4)(i)(e)(1)(ii), (c)(4)(ii)(d)(1)(ii); *Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-CV-9612, 2023 WL 6122904, at *2 ("For the years 2019 and 2020 for '[s]mall employers of 10 or fewer employees,' a person must have been paid 'a salary, inclusive of board, lodging, or other allowances and facilities, of not less than' $1,012.50 and $1,125.00 per week respectively." (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.14(c)(4)(ii)(d)(1))).

Defendants' pay records show that they paid Plaintiff below the prevailing amounts for eighteen weeks in 2020 and 2021. Accordingly, based on Defendants' own pay records, Plaintiff was not an exempt employee under the NYLL for at least the eighteen weeks when he was not paid the requisite salary for exempt employees and is therefore may be entitled to overtime pay for those weeks. The Court also separately considers Plaintiff's spread-of-hours claim, wage notice, and wage statement claims for this time period.

---

[8]  Although BAP JIP LLC is not named as a defendant, Defendants concede that they employed Plaintiff through both BAP JIP LLC and Mihwa Jo Corp., (F. Joe Dep. 69:21–23), and that Defendants only paid Plaintiff from BAP JIP LLC when Noodle Flower was closed. (*Id.* 124:17–24.)

### 1. Overtime claims

Defendants' relevant records for this time period indicate that Plaintiff typically worked more than forty hours per week and was therefore entitled to overtime payments. (Pl.'s 56.1 ¶ 5 ("Plaintiff usually worked 67 hours per week, and one week per month he worked approximately 83 hours.").) Defendants do not dispute that Plaintiff generally worked more than forty hours per week, (F. Joe Dep. 118:22–119:6), but contend that the timecards do not accurately represent the hours Plaintiff worked and assert that Plaintiff was not paid based on when he clocked in and clocked out. Joe testified that Plaintiff "never clocked in properly," (*id.* 117:18), and that he used Plaintiff's timecards to "estimate" how much Plaintiff worked, (*id.* 119:14–16), but that Plaintiff was paid a set salary and was not paid more if he worked more, (*id.* 123:7–10; Defs.' 56.1 Resp. ¶ 4 ("Plaintiff did not consistently clock in and out and wrote the number of days that he worked at the bottom of the timecards.").) Joe conceded that Plaintiff began clocking in correctly around 2018. (F. Joe Dep. 111:4–5.) Joe also testified that employees, including Plaintiff, received a one-hour break, and that he often saw Plaintiff take one-hour breaks. (*Id.* 118:22–23; 131:11–132:5.) Defendants do not present any records or policies establishing that employees received a one-hour break.

Plaintiff testified that he consistently "used physical punch cards and punched in and out using a time clock . . . ." (J. Pastuizaca Dep. 108:14–20,; Pl.'s 56.1 ¶ 9 ("After Defendants instituted a time clock, Plaintiff consistently used the time clock to record and report his hours.").) Plaintiff contends that he "rarely took more than 10 to 15 minutes a day for lunch," (Compl. ¶ 34), and his timecards do not reflect an intra-shift break.

Both the FLSA and the NYLL provide that employees must be "compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty [hours] per week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200

(2d Cir. 2013); *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. 11-CV-3384, 2012 WL 4174725, at \*3
(E.D.N.Y. Aug. 21, 2012) (citing to *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-
1089, 2011 WL 4962397, at \*3 (E.D.N.Y. Oct. 18, 2011)).  Both statutes provide that the regular
rate is either the actual rate at which the employee is paid or the statutory minimum wage,
whichever is higher.  *See* 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2
(providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-
half times the employee's regular rate in the manner and methods provided in" the FLSA); *see
also Silva v. Legend Upper West LLC*, No. 16-CV-3552, 2021 WL 4197360, at \*10 (S.D.N.Y.
Sept. 14, 2021) (calculating the plaintiffs' overtime rate of pay under the FLSA and the NYLL at
one and one-half times the minimum wage).  Under the NYLL, a "regular rate" is either the
employee's hourly pay or, if the employee is paid on "any basis other than hourly rate, the
regular hourly wage rate shall be determined by dividing the total hours worked during the week
into the employee's total earnings."  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16.  Because
Plaintiff's salary met the prevailing minimum under the FLSA but not the NYLL, the Court
assesses Plaintiffs' overtime claims under the NYLL.

The NYLL applies a similar standard as the FLSA to unpaid compensation claims.  *See
Gamero v. Koodo Sushi Corp.*, 752 F. App'x 33, 36–37 (2d Cir. 2018) (holding that under the
FLSA and the NYLL, the "plaintiff bears the burden of proving that he performed work for
which he was insufficiently compensated" in the absence of complete employer records (citing
*Anderson*, 328 U.S. at 687)); *see also Teofilo v. Real Thai Cuisine Inc.*, No. 18-CV-7238, 2021
WL 22716, at \*3 (S.D.N.Y. Jan. 4, 2021) ("A similar standard applies to unpaid compensation
claims under [the] NYLL") (alteration in original)); *Gonzalez v. Masters Health Food Serv. Inc.*,
No. 14-CV-7603, 2017 WL 3835960, at \*16 (S.D.N.Y. July 27, 2017) ("A similar [burden-
shifting] standard applies to unpaid compensation claims under NYLL."); *Canelas v. World*

*Pizza, Inc.*, No. 14-CV-7748, 2017 WL 1233998, at \*9 (S.D.N.Y. Mar. 31, 2017) (similar);

*Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at \*27–28 (S.D.N.Y. June 9,

2016) (applying the FLSA burden-shifting framework for establishing overtime claims to the

NYLL).

      An employee bringing an action for an unpaid overtime claim under the FLSA "must

prove that he performed work for which he was not properly compensated, and that the employer

had actual or constructive knowledge of that work." *Kuebel*, 643 F.3d at 361 (citing *Anderson v.*

*Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)); *Hernandez Gomez v. 4 Runners, Inc.*,

769 F. App'x 1, 2 (2d Cir. 2019) (citing *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58,

66–67 (2d Cir. 1997)). "Thus, at summary judgment, if an employer's records are inaccurate or

inadequate, an employee only need present 'sufficient evidence to show that the amount and

extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Kuebel*, 643

F.3d at 362 (alteration in original) (quoting *Anderson*, 328 U.S. at 687); *Hernandez Gomez*, 769

F. App'x at 2 ("Absent employer records, 'employees need only . . . produce sufficient evidence

to show the amount and extent of that work as a matter of just and reasonable inference.'"

(alteration in original) (quoting *Reich*, 121 F.3d at 69)); *Gamero*, 752 F. App'x at 36 ("[T]he

plaintiff bears the burden of proving that he performed work for which he was insufficiently

compensated, and of producing sufficient, credible evidence showing the amount and extent of

the uncompensated work as a matter of just and reasonable inference." (quoting *Anderson*, 328

U.S. at 687)). "[A]n employee's burden in this regard is not high," and "it is possible for a

plaintiff to meet this burden through estimates based on his own recollection." *Kuebel*, 643 F.3d

at 362. "The burden then shifts to the employer to come forward with evidence of the precise

amount of work performed or with evidence to negative the reasonableness of the inference to be

drawn from the employee's evidence." *Reich*, 121 F.3d at 69 (quoting *Anderson*, 328 U.S. at

687); *Kuebel*, 643 F.3d at 362 (same). "Should the employer fail to produce such evidence, the court may award damages, even though the result is only approximate." *Id.* (quoting *Anderson*, 328 U.S. at 687); *Kuebel*, 643 F.3d at 362 (same).

"[U]nder the NYLL, an employer who fails to keep accurate records" is subject to "a more stringent burden of proof" than under the FLSA. *Teofilo*, 2021 WL 22716, at *3; *Quintanilla v. Suffolk Paving Corp.*, No. 09-CV-5331, 2019 WL 885933, at *30 (E.D.N.Y. Feb. 22, 2019) ("[T]he New York standard places a more demanding burden on employers than the FLSA."); *Berrios v. Nicholas Zito Racing Stable, Inc.*, No. 04-CV-22, 849 F. Supp. 2d 372, 380 (E.D.N.Y. 2012) (same). The NYLL provides "that an employer who fails to maintain the appropriate records 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Andreyuk v. ASF Constr. & Excavation Corp.*, No. 19-CV-7476, 2022 WL 4658457, at *10 (S.D.N.Y. Sept. 30, 2022) (quoting *Teofilo*, 2021 WL 22716, at *3); *see* N.Y. Lab. Law § 196-a(a). If an employer fails the burden-shifting test established under the FLSA, they are unlikely to meet the more demanding NYLL test. *Canelas*, 2017 WL 1233998, at *9 ("If an employer cannot satisfy its burden under the FLSA, it cannot satisfy the 'more demanding burden' of the NYLL." (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005))).

The Court finds that Plaintiff's timesheets provide "sufficient evidence" to show the amount and extent of his uncompensated overtime work. *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687). Although Defendants dispute the accuracy of the timecards, (F. Joe Dep. 117:18), Plaintiff appears to have regularly clocked in and clocked out during the weeks where his salary was below the NYLL statutory minimum. Both parties testified that Plaintiff's regular schedule was six days per week, (J. Pastuizaca Dep. 85:23–86:6; F. Joe. Dep. 103:24–104:2), which is supported by Plaintiff's timecards. Defendants' own testimony supports that

Plaintiff had correctly used the timeclock for over a year before the weeks where he was non-exempt. (F. Joe Dep. 111:4–5.) Plaintiff has thus offered "sufficient evidence" as to the amount of his uncompensated work. *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687); *Junmin Shen v. Numbe One Fresco Tortillas, Inc.*, No. 16-CV-2015, 2018 WL 6712771, at *9–10 (S.D.N.Y. Nov. 26, 2018) (concluding that plaintiffs "have carried their burden of demonstrating that they are entitled to compensation for unpaid overtime work" because they "consistently testified that they worked more than forty hours per week," defendants "did not maintain accurate records of [p]laintiffs' hours worked," and defendants' testimony was "both conflicting and at odds with their own time sheets"); *Hernandez*, 2016 WL 3248493, at *6–7, 28 (finding that employees' "declarations and live testimony as to their recollections of their hours worked" established their overtime hours where the employers' timesheets were created retrospectively). Defendants have not provided sufficient evidence to overcome the NYLL's stringent burden to "negative the reasonableness of the inference" drawn from Plaintiff's timecards.[9] *Reich*, 121 F.3d at 69 (quoting *Anderson*, 328 U.S. at 687–88). *See Quintanilla*, 2019 WL 885933, at *32–33 (denying defendants' motion for summary judgment where plaintiffs' timesheets and testimony demonstrated plaintiffs worked 10-20 uncompensated overtime hours per week and defendants did not provide evidence that plaintiffs were compensated for those hours); *cf. Murray v. City of New York*, No. 16-CV-8072, 2020 WL 615053, at *10 (S.D.N.Y. Feb. 10, 2020) (denying summary judgment on plaintiffs' overtime

---

[9] Defendants' testimony that Plaintiff did not clock in properly and that he had to "estimate" Plaintiff's hours, (F. Joe. Dep. 117:18, 119:14–16), contradicts Defendants' testimony that Plaintiff began clocking in properly around 2018, (*id.* 111:4–5). Because all of the weeks when Defendants paid Plaintiff less than the statutorily required minimum under the NYLL occurred after 2018, and because, as discussed above, Plaintiff appears to have consistently used the timecards during the disputed weeks, the Court concludes that Defendants have not overcome the "stringent burden of proof" of showing that they properly compensated Plaintiff. *Teofilo v. Real Thai Cuisine Inc.*, No. 18-CV-7238, 2021 WL 22716, at *3 (S.D.N.Y. Jan. 4, 2021).

claims where they did not "direct[] the [c]ourt to evidence of the actual hours and corresponding amount of unpaid overtime they claim to have worked"). Accordingly, the Court will use Plaintiff's timecards to calculate his overtime damages, even though such calculations may be "approximate." *Reich*, 121 F.3d at 69.

The NYLL overtime provision applies to Plaintiff's employment from September 16, 2016 to August 1, 2021.[10] For purposes of calculating overtime damages, the Court finds that Plaintiff's "regular rate" was $20 per hour.[11] This results in an overtime premium of $30 per hour: ($20 per hour x 1.5). Plaintiff worked 82.25 overtime hours during the weeks Noodle Flower was operating, and 260.9 overtime hours during the weeks Noodle Flower was closed in 2021.[12] Defendants therefore owe Plaintiff total lost wages of $10,294.50 ([82.25 + 260.9 hours] x $30 per hour) for his unpaid overtime claims.

---

[10]  Although Plaintiff's precise dates of employment are disputed, the NYLL has a six-year statute of limitations. N.Y. Lab. Law § 198(3) ("[A]n action to recover upon a liability imposed by this article must be commenced within six years."). Plaintiff filed this action on September 16, 2022. Plaintiff's claims are thus timely as to any NYLL violations that occurred on or after September 16, 2016.

[11]  Plaintiff testified and Defendants agreed that Defendants paid him at a daily rate of $216. (F. Joe. Dep. 105:11–12, 107:23–108:15; Pl.'s 56.1 ¶ 10.) Because the "regular rate" is determined by dividing the total hours worked during the week, N.Y. Comp. Codes R. & Regs. tit. 22 § 142-2.16, and Plaintiff's timecards show that he typically worked between ten and eleven hours per day, Plaintiff's calculated rate is approximately $20 per hour.

[12]  Plaintiff's timecards establish that he worked in excess of forty hours per week for fourteen of the weeks when he was paid below the NYLL statutory minimum, for a total of 82.25 hours when Noodle Flower was operating, and 214.15 hours in 2021 when Noodle Flower was closed. (J. Pastuizaca Timecards.) For one additional week during Noodle Flower's closure, Plaintiff's timecard is missing one clock out entry, but there are entries for six days of work. (J. Pastuizaca Timecards, Week of Apr. 11, 2021, DNF000180.) The Court will approximate that Plaintiff worked 11 hours on the day he did not clock out during the week of April 11, 2021 based on Defendants' estimation of Plaintiff's regular shift. (F. Joe Dep. 118:25–119:3 (estimating Plaintiff's regular shift is 11 hours).)

For the week of February 14, 2021, there is no timecard in the record, although Defendants paid Plaintiff the same amount they paid him during the weeks Noodle Flower was

## 2. NYLL spread-of-hours claim

Defendants argue that Plaintiff is not entitled to spread-of-hours pay because he is an exempt employee. (Defs.' Mem. 12.) Plaintiff argues that he is entitled to spread-of-hours pay under the NYLL because "Defendants did not pay Plaintiff an extra hour's pay at the minimum wage for each day he worked in excess of 10 hours . . . ." (Pl.'s Opp'n 19.)

New York law provides that "[o]n each day on which the spread of hours exceeds [ten], an employee shall receive one additional hour of pay at the basic minimum hourly rate." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(a); *Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018). "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday," and includes "working time plus time off for meals plus intervals off duty." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6; *Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 654 (2d Cir. 2021); *see also Rodriguez v. Ridge Rest., Inc.*, No. 16-CV-254, 2020 WL 7711859, at *5 (E.D.N.Y. Dec. 29, 2020) (describing the spread of hours law). The spread of hours regulations "appl[ies] to all employees in restaurants . . . regardless of a given employee's regular rate of pay." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(d); *see also*

---

closed and Plaintiff worked a full schedule. Given the absence of any evidence of Plaintiff's hours for the week of February 14, 2021, the Court will approximate Plaintiff worked 61.75 hours, which is the average number of hours Plaintiff's timecards show he worked during the period Noodle Flower was closed, and which is further supported by both parties' testimony that Plaintiff's regular schedule was around 60 hours per week. (F. Joe Dep. 119:3–6; J. Pastuizaca Dep. 85:8–16.) *See Chen v. L&H Wine & Liquor, Inc.*, No. 19-CV-6115, 2024 WL 1932855, at *3 (S.D.N.Y. May 2, 2024) (calculating the number of hours an employee worked based on their affidavit); *Chen v. Hunan Manor Enter., Inc.*, No. 17-CV-802, 2023 WL 5574854, at *4 (S.D.N.Y. Aug. 29, 2023) ("Because [d]efendants failed to maintain adequate employment records, this [c]ourt relies on available documents in evidence and credible trial testimony in order to approximate [p]laintiffs' dates of employment, hours worked, rate of pay, and compensation."); *Kim v. Kum Gang, Inc.*, No. 12-CV-6344, 2015 WL 2222438, at *26 (S.D.N.Y. Mar. 19, 2015) (determining the number of hours an employee worked based on the employee's testimony). Plaintiff's total uncompensated overtime is 82.35 hours during the period Noodle Flower was operating and 260.9 hours during the time Noodle Flower was closed.

*Maldonado v. Aangan of India LLC*, No. 20-CV-9598, 2024 WL 3910812, at \*14 (S.D.N.Y. July 22, 2024) ("[T]he spread of hours regulations 'apply to all employees in restaurants . . . regardless of a given employee's regular rate of pay.'" (alterations in original) (quoting *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at \*5 (S.D.N.Y. Mar. 9, 2020))), *report and recommendation adopted*, 2024 WL 3887130 (S.D.N.Y. Aug. 20, 2024); *Rodriguez*, 2024 WL 3760583, at \*12 (same); *Zhang v. Great Sichuan on 3rd Ave. Inc.*, No. 15-CV-4558, 2024 WL 1159002, at \*10 (S.D.N.Y. Feb. 2, 2024) ("[U]nder the Minimum Wage Order for Miscellaneous Industries and Occupations, restaurant . . . workers are entitled to spread of hours pay under the Hospitality Industry Wage Order 'regardless of a given employee's regular rate of pay.'" (citations omitted)), *report and recommendation adopted*, 2024 WL 1158451 (S.D.N.Y. Mar. 15, 2024).  Courts calculate spread of hours damages "by multiplying the number of days an employee worked more than ten hours by 'the basic minimum wage rate.'"  *Maldonado*, 2024 WL 3910812, at \*18 (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4(a)).

Plaintiff is entitled to spread of hours pay.  Plaintiff alleges that he worked eleven and a half hours per day, six days per week, throughout his employment with Defendants.  (*See* Pl.'s Opp'n 19.)  Because Plaintiff worked at a restaurant, he is eligible for spread of hours pay even though his regular rate of pay was above the minimum wage throughout his employment.  *See Anzures v. Maredin Rest. Corp.*, No. 22-CV-2798, 2024 WL 1376812, at \*12 (E.D.N.Y. Jan. 24, 2024) (noting that "[r]estaurant workers are entitled to a spread of hours premium regardless of their regular rate of pay" and awarding a plaintiff spread of hours pay for a time period where his regular rate of pay was above minimum wage), *report and recommendation adopted*, 2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024).  The Court therefore awards Plaintiff one "additional hour of pay at the basic minimum hourly rate" for each day that he worked over ten hours.  *See* N.Y.

19

Comp. Codes R. & Regs. tit. 12 § 146-1.6(a); *Rana*, 887 F.3d at 123 n.3 ("New York . . . awards 'spread of hours pay' . . . in which an employee who works more than ten hours in one day must be paid an additional hour at the state minimum wage amount." (citing N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4)).

In September of 2019, the New York minimum wage was $13.50 per hour, therefore Plaintiff is entitled to $54 in spread-of-hours pay for this period: [$13.50 per hour x 4 days per week x 1 week = $54]. From December 31, 2019, the minimum wage was $15.00, therefore Plaintiff is entitled to $1,080 in spread-of-hours pay for this period: [($15 per hour x 5 days per week x 1 week) + ($15 per hour x 6 days per week x 12 weeks) = $1,080].

Accordingly, Plaintiff is entitled to $1,134 in spread-of-hours pay.

### 3. NYLL wage notice and wage statement claims

Defendants argue that Plaintiff is not entitled to summary judgment on his wage notice statement claims because Plaintiff has "failed to establish an injury traceable to the [D]efendants' purported violation of the wage statement requirement" and thus has not alleged Article III standing. (Defs.' Mem. 12.)

Plaintiff argues that he is entitled to summary judgment on his wage notice and statement claims because Defendants "concede that they did not provide wage notices or paystubs" as required by NYLL §§ 195(1) and 195(3). (Pl.'s Opp'n 19.) Plaintiff argues that he has properly alleged standing to bring a wage statement claim and further argues that "Defendants' failure to provide wage notices and pay stubs denied [Plaintiff] the ability to determine the actual hours he worked. Therefore, Plaintiff was unaware that he was being underpaid and was not able to advocate for himself with his employers." (*Id.* at 20–21.)

The NYLL requires employers to provide a wage notice to an employee at the time of hiring. N.Y. Lab. Law § 195(1)(a); *Saltos v. GCI Constr. Corp.*, No. 21-CV-6459, 2022 WL

3108622, at *5 (E.D.N.Y. July 18, 2022); *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569 (E.D.N.Y. 2015) ("As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." (quoting *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014))).  This notice must include, among other things, (1) "the rate or rates of pay and basis thereof"; (2) "whether paid by the hour, shift, day, week, salary, piece, commission, or other"; (3) "the regular pay day designated by the employer"; (4) "the name of the employer"; (5) "any 'doing business as' names used by the employer"; and (6) "such other information as the commissioner deems material and necessary."  N.Y. Lab. Law § 195(1)(a); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-0139, 2022 WL 2467242, at *14 (E.D.N.Y. Mar. 7, 2022) ("Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule."); *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 219 (E.D.N.Y. 2021) (describing the required contents of the wage notice under § 195(1)). Under the statute, if a wage notice under section 195 "is not provided within ten business days of" the employee's "first day of employment," the employee "may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  N.Y. Lab. Law § 198(1-b); *see also Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 570 (E.D.N.Y. 2015) (citing N.Y. Lab. Law § 198(1-b)).

The NYLL also requires employers to give employees a wage statement with each payment of wages. *Avila v. Velasquez Constr. Corp.*, No. 22-CV-2606, 2023 WL 5979180, at *6 (E.D.N.Y. June 30, 2023) (citing N.Y. Lab. Law § 195(3)).  The statement must "contain[]

certain information including the hours being compensated, the wages paid, and any deductions."
*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 598 n.3 (2d Cir. 2020) (citing N.Y. Lab. Law § 195(3)).
An employee who is not given these statements may "recover in a civil action damages of two
hundred fifty dollars for each work day that the violations occurred or continue to occur, but not
to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees."
N.Y. Lab. Law § 198(1-d); *Fisher*, 948 F.3d at 598 n.3.

      To recover for a wage notice and statement violation in federal court, however, a plaintiff
must demonstrate more than just a defendant's contravention of the wage statement provision
because "in suits for damages plaintiffs cannot establish Article III standing by relying entirely
on a statutory violation." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir.
2021). "'Standing to sue is a doctrine' that 'limits the category of litigants empowered to
maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Liberian Cmty. Ass'n of
Conn. v. Lamont*, 970 F.3d 174, 183–84 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S.
330, 338 (2016)). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in
fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused
by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Stafford v.
Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (alteration in original) (quoting
*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "An injury in fact must be
'particularized,' and it must be 'concrete.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d
Cir. 2022) (quoting *Spokeo*, 578 U.S. at 340). As such, "a bare procedural violation, divorced
from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III."
*Spokeo*, 578 U.S. at 341.

      "[S]tanding is required for subject matter jurisdiction." *James v. Willis*, No. 21-501,
2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (citing *Strubel v. Comenity Bank*, 842 F.3d 181,

187 (2d Cir. 2016)). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

### A.    Wage notice claim

Plaintiff has sufficiently established Article III standing with respect to his wage notice claim. Defendants admit that they did not provide Plaintiff with wage notices or anything "showing what his rate of pay was going to be." (F. Joe. Dep. 105:13–20; 135:17–19.) Plaintiff alleges Defendants' failure to "provide Plaintiff a paystub or wage notice showing his hourly rate or overtime rate" prevented "him from understanding the amount of hours he worked each week and realizing that he was not being paid time and a half of his regular rate for all hours above 40 per week." (Pl.'s 56.1 ¶¶ 15–16.) Thus, the "downstream consequences" of Plaintiff not receiving his wage notice were that he was not "aware that he was not being paid properly." (*Id.* ¶ 17); *TransUnion*, 594 U.S. at 442 ("[T]he plaintiffs have identified no 'downstream consequences' from failing to receive the required information." (citation omitted)). Plaintiff argues that had he been aware he was not being paid overtime, "he would have spoken with Defendants about correcting his pay and recovering payments that were due to him." (Pl.'s 56.1 ¶ 17.) Plaintiff has thus alleged a "concrete" and "particularized" injury resulting from Defendants' failure to provide him with wage notices. *See, e.g.*, *Veloz v. MM Custom House Inc.*, No. 19-CV-852, 2024 WL 1282698, at *6 (E.D.N.Y. Mar. 26, 2024) (concluding that plaintiffs sufficiently alleged standing for NYLL wage notice and statement violations because plaintiffs alleged that the "downstream consequences" of not receiving wage notices and wage statements "prevented them from verifying their pay and deprived them of income until they consulted an attorney and initiated legal action"); *Isayeva v. Diamond Braces*, No. 22-CV-4575,

2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) (finding plaintiffs had standing to bring NYLL wage statement claims because they sufficiently alleged injury because defendants' inaccurate "reporting obfuscated the fact of [d]efendants' alleged time-shaving and hindered [p]laintiffs' ability, at the time they were paid, to discover their underpayment and advocate for themselves"); *Lipstein v. 20X Hospitality LLC*, No. 22-CV-4812, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (finding that plaintiff pled injury-in-fact by alleging that not receiving notice and wage statements prevented him from "(i) realizing [his] true hours worked; (ii) realizing [he was] underpaid; and (iii) taking appropriate action to obtain the payments due to [him]"); *Arguello v. Lojan*, No. 22-CV-6236, 2023 WL 6594854, at *7 (E.D.N.Y. July 12, 2023) (finding that plaintiff had standing because he alleged that defendant's breach of his obligation to provide plaintiff with notice and wage statements "den[ied him] the right to know the conditions of [his] compensation, resulting in the underpayment of wages"), *report and recommendation adopted in relevant part*, 2023 WL 6172246 (E.D.N.Y. Sept. 22, 2023); *cf. Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2023 WL 2206568, at *4–7 (E.D.N.Y. Feb. 24, 2023) (dismissing NYLL wage statement claim where the "[p]laintiff did not link any injury-in-fact that he personally experienced to [the d]efendants' failure to provide statutory notices under the NYLL").

Defendant's failure to provide wage notice[13] entitles Plaintiff to recover fifty dollars for each workday that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars.  N.Y. Lab. Law § 198(1-b).  Plaintiff worked for Defendants for more than 100 days as a non-exempt employee, and is thus entitled to recover the statutory maximum of $5,000. *See Leon Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *10 (E.D.N.Y.

---

[13]  There is no dispute that Defendants did not provide Plaintiff with wage notice.  (Pl.'s 56.1 ¶ 15 ("Defendants did not provide Plaintiff a . . . wage notice"); F. Joe Dep. 105:13–15.)

Nov. 29, 2021) (concluding plaintiffs are entitled to $5,000 in damages each because they worked for defendants for more than 100 days without receiving wage notice); *Qiu Hua Tan v. Voyage Express Inc.*, No. 15-CV-6202, 2017 WL 2334969, at *7 (E.D.N.Y. May 25, 2017) (awarding plaintiffs "the statutory maximum of $5000" because they "were employed by defendants for respective periods in excess of one hundred days yet never received the requisite wage notices").

### B. Wage statements claim

There are disputes of material fact as to whether Defendants provided Plaintiff with wage statements precluding summary judgment. Plaintiff argues that he did not receive a wage statement. (Compl. ¶ 38–40.) However, Joe testified at his deposition that he showed Plaintiff an excel sheet every week that had a "breakdown of the pay," including "the numbers of hours that they worked" and their overtime hours. (F. Joe. Dep. 105:16–106:20.) Joe contends that he would show Plaintiff the spreadsheet weekly and had him sign a copy of it after he received his paycheck. (*Id.* 106:12–20.) He also testified that Plaintiff received paystubs from the paycheck processing company Olympic, which would have reflected the hours he worked. (*Id.* 96:20–97:9.) Included in Plaintiff's timecards are two Noodle Flower Payroll Summaries for the weeks of September 13, 2020 and September 20, 2020. (J. Pastuizaca Timecards, DNF000151; DNF000152.) The timecards include details matching Joe's description, namely, a statement of the hours Plaintiff worked, his regular rate of pay, and Plaintiff's signature.[14] (*Id.*) Accordingly, there is a dispute of material fact as to whether Defendants provided Plaintiff with wage

---

[14] The summaries also show an overtime rate and overtime hours worked, which Joe explained was not reflective of Plaintiff being paid an hourly rate, but an "estimate" of the total number of 10-hour daily shifts Plaintiff worked that week. (F. Joe. Dep. 117:5–119:17.) Joe testified that he could not rely on the time clock because Plaintiff did not use it properly. (*Id.*)

statements as required by the NYLL.  The Court therefore denies both parties' motions for summary judgment regarding this claim.

### 4. Liquidated damages

Plaintiff seeks liquidated damages under both the FLSA and the NYLL.  Because the Court only finds Defendants liable for uncompensated overtime payment under the NYLL, the Court accordingly only considers Plaintiff's request for liquidated damages for unpaid wages under the NYLL.  (Compl. ¶¶ 58, 66.)

"'[U]nless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due' must also be paid." *Rana*, 887 F.3d at 123 (quoting N.Y. Lab. Law § 198(1-a)); *see also Hernandez*, 2016 WL 3248493, at \*34 ("Similarly, under the NYLL, an employee is entitled to 'liquidated damages equal to one hundred percent of the total amount of wages found to be due,' 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'") (quoting NYLL § 198(1-a))).  "While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences . . . ." *Rana*, 887 F.3d at 122. "[C]ourts have not substantively distinguished the federal standard from the current state standard of good faith." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).  The FLSA provides for the payment of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260; *see also Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) ("The FLSA provides for 'the payment of wages lost and an additional equal

amount as liquidated damages . . . .'" (quoting 29 U.S.C. § 216(b))).  The employer bears the burden of proving good faith.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (citing *Reich*, 121 F.3d at 71); *Gortat*, 949 F. Supp. 2d at 380 ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." (quoting *Herman*, 172 F.3d at 142)).  "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Herman*, 172 F.3d at 142.

Defendants have not proffered any good faith basis or explanation for their underpayment of wages.  Joe testified that he "tried to keep [himself] as up-to-date" on the applicable minimum wage and overtime laws by reviewing government websites.  (F. Joe. Dep. 68:15–21.)  He did not receive any training on the relevant labor laws or seek out professional advice about complying with the FLSA and NYLL.  (*Id.*)  *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021) (granting summary judgment on plaintiff's liquidated damages claim where defendants did not testify that they consulted with a lawyer or another professional before deciding on their payroll practices); *Inclan*, 95 F. Supp. 3d at 504 (granting summary judgment on plaintiffs' liquidated damages claims because defendants did not show that they received or followed advice from counsel about following the FLSA's requirements).  Defendants' efforts do not show that he took "active steps" to understand and comply with the NYLL.  *Herman*, 172 F.3d at 142; *Garcia v. JonJon Deli Grocery Corp.*, No. 13-CV-8835, 2015 WL 4940107, at *6 (S.D.N.Y. Aug. 11, 2015) (granting summary judgment on plaintiff's liquidated damages claims where defendants' assertions that they "did not possess the knowledge or skill needed to comply with complex labor laws" and "relied on the advice of others" were insufficient to show good faith compliance with the FLSA and NYLL).  Defendants "kept minimal and wholly unreliable records" related to Plaintiff's employment, "demonstrating a lack of concern for payment of his

wages in accordance with the law." *Ramirez v. Lin*, 830 F. App'x 672, 675 (2d Cir. 2020).  The Court therefore awards Plaintiff liquidated damages for his unpaid wages under the NYLL overtime and spread-of-hours statutes, equal to "one hundred percent of the total of . . . underpayments found to be due" to Plaintiff.  N.Y. Lab. Law § 663(1); *see also Jimenez v. Green Olive Inc.*, --- F. Supp. 3d ---, 2024 WL 3763467, at *20 (E.D.N.Y. Aug. 13, 2024) ("The NYLL . . . permits employees to recover 'an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due' unless the employer provides 'a good faith basis to believe that its underpayment of wages was in compliance with the law.'" (quoting N.Y. Lab. Law § 663(1))); *Soto v. Crismeli Deli Grocery Inc.*, No. 19-CV-10053, 2024 WL 3730115, at *8 (S.D.N.Y. June 28, 2024) ("The amount of liquidated damages is equal to 100% of the amount owed to the [p]laintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours." (quoting *Villanueva v. 179 Third Ave Rest. Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report and recommendation adopted*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021))), *report and recommendation adopted*, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024).  Accordingly, the Court awards Plaintiff $11,428.50 in liquidated damages, which is equal to the amount of unpaid overtime wages and spread-of-hours pays owed to him.

### 5.   Prejudgment interest

Plaintiff seeks prejudgment interest on his damages under the NYLL.  (Compl. ¶¶ 58, 62, 66.)

Section 198(1-a) of the NYLL allows an employee who prevails in an action on a wage claim to recover "prejudgment interest as required under the civil practices and rules."  *See Rana*, 887 F.3d at 123 (stating that the NYLL liquidated damages provision permits employees to recover "prejudgment interest as required under the civil practice law and rules").  The

28

applicable interest rate is 9% per annum.[15]  *See Ramirez*, 830 F. App'x at 673 (applying a 9% interest rate to prejudgment interest under the NYLL (citing *Ramirez v. Roka Japanese Food*, No. 18-CV-296, 2019 WL 2372866, at *1 (E.D.N.Y. June 5, 2019))); *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2023 WL 6214213, at * 4 (E.D.N.Y. Sept. 25, 2023) ("The NYLL provides for an award of pre-judgment interest in addition to liquidated damages, calculated at 9% per year." (citations omitted)); *Tarax v. Blossom West Inc.*, No. 19-CV-6228, 2022 WL 2132749, at *4 (S.D.N.Y. June 14, 2022) ("Pursuant to New York state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." (citation omitted)); *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 24, 2020) (citing N.Y. C.P.L.R. §§ 5001(b), 5004).  "Interest shall be computed from the earliest ascertainable date the cause of action existed," or "[w]here such damages were incurred at various times, interest shall be computed upon each such item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b).

Because Defendants failed to pay Plaintiff overtime over several weeks spread across multiple years, the Court calculates prejudgment interest from a reasonable intermediate date. *See Feuer*, 2020 WL 401787, at *12 & n.22 (calculating prejudgment interest on unpaid wages from a date halfway between the first and last days of the employee's employment); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020) (calculating prejudgment interest on unpaid wages from the midpoint of the first and last date of underpayment); *Santillan*

---

[15]  Because Plaintiff is receiving damages only under the NYLL, the Court only considers prejudgment interest under that statute.  *See Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *16 (E.D.N.Y. Dec. 21, 2016) (considering prejudgment interest under the NYLL rather than the FLSA "because the [c]ourt has recommended that plaintiff receive damages only under the NYLL"), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018).

*v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (determining prejudgment interest as the "midway point between when plaintiff[s] began and ceased working for defendant[s]" (alterations in original) (internal quotation marks omitted)).  Defendants failed to pay Plaintiff overtime wages between September 19, 2019 and June 27, 2021.  The Court therefore calculates interest from July 29, 2020, the date halfway between September 19, 2019 and June 27, 2021. Plaintiff is entitled to prejudgment interest on his wage claim damages from July 29, 2020, until the date judgment is entered, at a rate of $4.04 per day.[16]  *See Ying Ying Dai*, 490 F. Supp. 3d at 662.

### ii.   There is a dispute of material fact as to Plaintiff's remaining FLSA and NYLL overtime claims

The Court considers Plaintiff's remaining overtime claims for the period from September 18, 2016 to August 8, 2021 by analyzing whether Plaintiff was an executive or administrative employee under the FLSA and NYLL.  Applying the three-part test for an employee to qualify for the executive or administrative exemption under the FLSA, the Court finds that, although Plaintiff's salary satisfied the salary level test, there is a material dispute of fact as to the salary basis and the duties tests.[17]

---

[16]  The Court calculates prejudgment interest as follows: ([$10,294.50 in unpaid overtime wages + $1,134 in violation of NYLL's spread-of-hours law + $5,000 in violation of NYLL's wage notice law] x [9% interest /365 days]).

[17]  The Court analyzes the salary level and salary basis tests in determining whether Plaintiff is exempt under both the executive and administrative exemption because they are both required for an employee to qualify for an executive or administrative exemption.  *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44–45 (2023) (holding that the executive exemption under the FLSA requires an employee to satisfy a salary level test, salary basis test, and duties test); *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 148 (2d Cir. 2013) (holding that the administrative exemption under the FLSA requires an employee to satisfy "a duties requirement and a salary requirement").

### 1.   Salary level test

The parties do not dispute that Plaintiff meets the salary level test.  (Pl.'s Opp'n 12

("Plaintiff putatively earned more than the weekly regulatory amount for small New York City

employers . . . ."); Defs.' Mem. 8 ("Plaintiff was paid a fixed salary of more than the minimum

threshold salary per week both under the FLSA and NYLL during the entire period of his

employment.").)  Defendants' pay records indicate that Plaintiff's weekly wages exceeded the

minimum required for exempt employees under both the FLSA and NYLL throughout the

Plaintiff's employment, with the exception of the weeks discussed above.[18]  (Defs.' Pay Records

1–7.)

### 2.   Salary basis test

The second test for qualifying as an exempt employee is the salary basis test.  An

employee is considered to work on a "salary basis" if they "regularly receive[] each pay period

on a weekly, or less frequent basis, a predetermined amount constituting all or part of the

employee's compensation," and that salary "is not subject to reduction because of variations in

the quality or quantity of the work performed."  29 C.F.R. § 541.602(a); *Helix Energy Sols. Grp.,

Inc.*, 598 U.S. at 46 (citing the same); *Anani*, 730 F.3d at 147 (same).  The "predetermined"

amount "indicates only that this element of an employee's compensation must be both fixed and

determined prior to the period in which it would apply."  *Havey*, 547 F.3d at 164; *Coniff v.

Vermont*, No. 10-CV-31, 2013 WL 5429428, at *11 (D. Vt. Sept. 30, 2013) (noting that an

employee is paid on a salary basis if their compensation is "'fixed and determined' prior to the

time period being compensated." (quoting *Havey*, 547 F.3d at 164)); *Anani*, 788 F. Supp. 2d at

---

[18]  As discussed above, Plaintiff was not exempt during the following weeks when he was paid below the NYLL statutory minimum: September 19, 2019; May 10, 2020; May 24, 2020; January 31, 2021 through April 18, 2021; and June 27, 2021.  (*See supra* Section II.b.i.)

63 (similar). The employee must "receive the full salary for any week in which the employee performs any work without regard to the numbers of days or hours worked," 29 C.F.R. § 541.602(a)(1), but "need not be paid for any workweek in which they perform no work." *Id.*; *Nymbus, Inc. v. Sharp*, No. 17-CV-1113, 2019 WL 692938, at *6 (D. Conn. Feb. 19, 2019) ("But '[e]xempt employees need not be paid for any workweek in which they perform no work.'") (quoting 29 C.F.R. § 541.602(a)(1)). "The rule thus ensures that the employee will get at least part of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked." *Helix Energy Sols. Grp., Inc.*, 598 U.S. at 46; *Wetzel v. Town of Orangetown*, 556 F. App'x 46, 47 (2d Cir 2014) ("[A]n employee will be found to not have salaried status if 'his compensation may "as a practical matter" be adjusted in ways inconsistent with the regulation — that is, subject to reduction because of variations in the quality or quantity of the work performed.'" (quoting *Auer v. Robbins*, 519 U.S. 452, 455 (1997))); *S.E.C. v. Rosenthal*, 650 F.3d 156, 159 n.3 (2d Cir. 2011) ("The Secretary[ of Labor's] regulations defined the term 'salary basis' as requiring, *inter alia*, that the employee's compensation not to be '*subject to* reduction because of variations in the quality or quantity of the work performed.'" (quoting *Auer*, 519 U.S. at 455)).

A salary is subject to improper reductions if "there is either an actual practice of making [pay] deductions or an employment policy that creates a 'significant likelihood' of [pay] deductions." *Yourman v. Giuliani*, 229 F.3d 124, 129 (2d Cir. 2000) (alterations in original) (quoting *Auer*, 519 U.S. at 461); *Coleman-Edwards v. Simpson*, 330 F. App'x 218, 220 (2d Cir. 2009) (citing *Auer*, 519 U.S. at 461). Whether there is an employment policy that creates a "significant likelihood" of deductions depends on the "existence of a 'clear and particularized policy — one which effectively communicates that deductions *will be* made in specified circumstances.'" *Yourman*, 229 F.3d at 129 (quoting *Ahern v. County of Nassau*, 118 F.3d 118,

121 (2d Cir. 1997)); *Havey*, 547 F.3d at 163 ("However, 'exempt status will be denied only if there is . . . a clear and particularized policy — one which effectively communicates that deductions will be made in specified circumstances." (quoting *Auer*, 519 U.S. at 461)).  Whether there is an "actual practice" of making deductions depends on if "the employer's practices reflect an 'objective intention' to pay its employees on a salaried basis," which requires considering "factors such as the number of times that other forms of discipline are imposed, the number of employee infractions warranting discipline, the existence of policies favoring or disfavoring pay deductions, the process by which sanctions are determined, and the degree of discretion held by the disciplining authority." *Yourman*, 229 F.3d at 130 (citing *Auer*, 519 U.S. at 462); *Abramo v. City of New York*, 54 F. App'x 708, 710–11 (2d Cir. 2003) (holding that the "actual practice" of imposing pay deductions "requires the consideration of" the *Yourman* factors (quoting *Yourman*, 229 F.3d at 130)); *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 529 (E.D.N.Y. 2015) (applying the *Yourman* factors to determine whether an employee is subject to a policy favoring pay deductions); *Coleman-Edwards v. Simpson*, No. 03-CV-3779, 2008 WL 820021, at *9 (E.D.N.Y. Mar. 25, 2009) (analyzing whether an employee's salary was subject to an "actual practice" of impermissible pay deductions by applying the *Yourman* factors).

If an employee's salary is based on an hourly, daily, or shift rate, rather than on a weekly or less frequent basis, the employee may be exempt if the employer "guarantee[s]" the employee "at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days, or shifts worked" and there is a "reasonable relationship" between the "guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b); *Helix Energy Sols. Grp., Inc.*, 598 U.S. at 46–47 (quoting the same); *Anani*, 730 F.3d at 149 (same); *Giallanzo v. City of New York*, No. 20-CV-8509, 2021 WL 9036281, at *11 (S.D.N.Y. Dec. 21, 2021) (same), *report and recommendation adopted in part, rejected in part*, 630 F. Supp. 3d 439 (S.D.N.Y. 2022); *Padilla*

*v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290, 298 (E.D.N.Y. 2016) (same).  The "reasonable relationship" factor is satisfied if the guaranteed weekly amount is "roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek."  29 C.F.R. § 541.604(b); *Helix Energy Sols. Grp., Inc.*, 598 U.S. at 47 (holding that the employer must have promised a salary that bears a "'reasonable relationship' to the 'amount actually earned' in a typical week — more specifically, must be 'roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek'" (quoting 29 C.F.R. § 541.604(b)); *Anani*, 730 F.3d at 149 ("The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." (quoting 29 C.F.R. § 541.604(b)); *Giallanzo*, 2021 WL 9036281, at *11 (same).  "Those conditions create a compensation system functioning much like a true salary — a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week."  *Helix Energy Sols. Grp., Inc.*, 598 U.S. at 47.  *See also Havey*, 547 F.3d at 161 ("With certain exceptions, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." (internal quotation marks and citation omitted)).

Based on the record before the Court, there are questions of fact as to whether Plaintiff was paid on a salary basis.  The documentary and testimonial evidence is inconsistent as to whether Plaintiff was paid a fixed weekly rate that was improperly reduced when Plaintiff did not work his full schedule, or whether Plaintiff was paid based on a daily or hourly rate.  Joe and Cho both testified that Plaintiff worked on a "salary basis" and was paid a "fixed salary."  (F. Joe Dep. 102:4–14; F. Joe Decl. ¶ 43, annexed to Defs.' 56.1 Resp. as Ex. D, Docket Entry No. 34; S. Cho Decl. ¶ 14, annexed to Defs.' 56.1 Resp. as Ex. E, Docket Entry No. 34.)  Defendants

also contend that Plaintiff was an "exempt employee" who received a "fixed salary."  (Defs.' 56.1 Resp. ¶¶ 7, 8.)  Joe noted that there were "one or two occasions" where Defendants paid Plaintiff for the full week even when he did not work his regular schedule of six days due to illness or personal reasons, (F. Joe Dep. 107:8–15), but later testified that there were "[m]ore than ten" occasions where Plaintiff did not work the whole week but was paid for the whole week.  (*Id.* 155:3–18; Defs.' 56.1 ¶ 28 ("Plaintiff was paid his full salary even though he worked less than his full schedule of six (6) days a week, instructed by [Cho].").)  He contends that Plaintiff had a "set salary of $1,200 per week and raised to $1,300 per week due to his position." (Defs.' 56.1 Resp. ¶ 13.)  Joe also stated in an employment verification request Plaintiff used to secure a loan for his house that Plaintiff was paid $1,300 per week in two checks, with $802.50 per week coming from Mihwa Jo Corp. and $493.50 per week from BAP JIP LLC.  (Request for Verification of Employment, annexed to Pl.'s Reply Decl. as Ex. 1, Docket Entry No. 37-1.) Plaintiff likewise testified that he was paid "in two weekly checks: one payroll check [for $]800, one personal check [for $]500."  (J. Pastuizaca Dep. 113:21–115:2.)

However, Joe also testified during his deposition that Plaintiff's weekly wages amounted to $216 per day, (F. Joe Dep. 107:23–108:15, 139:20–24), and in most instances if Plaintiff worked one or two days, he was only paid for one or two days of work.  (F. Joe Dep. 107:19–22.)  Plaintiff similarly stated that he was only paid for the time he worked, and if he worked half a day, he was paid for half a day, (Pl.'s 56.1 ¶¶ 11, 12), and Joe appears to concede that Plaintiff did not have a minimum guaranteed salary, (F. Joe Dep. 139: 8–12; Pl.'s 56.1 ¶ 13 ("There was no guaranteed amount that Plaintiff would be paid each week; the amount he was paid was based on the number of days he worked.")).  Joe calculated Plaintiff's weekly pay by dividing $1,300 by the number of days Plaintiff worked that week.  (F. Joe Dep. 123:18–21.)  Joe also stated that Plaintiff would receive the $800 from Noodle Flower and then the other check "would be

increased or decreased depending on the number of days he worked." (*Id.* 153:22–154:2.) In other statements, Plaintiff suggested that he was paid on an hourly basis. (*See e.g.*, Plaintiff's statement that because Defendants did not provide him a paystub or wage notice, he did not know how many hours he worked or that he was not "paid time and a half of his regular rate for all hours above 40 per week." (Pl.'s 56.1 ¶¶ 15–16.))

Moreover, Defendants' payment records show that Plaintiff's salary fluctuated over the course of his employment. (Defs.' Pay Records.) For example, although Joe testified at his deposition that Plaintiff's salary was $1,200 in the beginning of his employment and then increased to $1,300, (F. Joe Dep. 102:11–14), Noodle Flower's pay records show that Plaintiff's wages frequently deviated from $1,200, and later, $1,300 per week. The pay records show that Plaintiff's wages were as low as $802.50 and as high as $1,516.61 for at least forty weeks over almost five years of employment. (Defs.' Pay Records 3, 7.)

Defendants have not presented any evidence to explain why Plaintiff's pay was increased or reduced by certain amounts on particular weeks. *See Andreyuk*, 2022 WL 4658457, at *2 (denying summary judgment where there was "a dearth of evidence in the present record explaining why [plaintiff's] pay was raised or reduced during certain weeks and why it was raised or reduced by particular amounts" but sufficient evidence for a factfinder to conclude that defendants' payments were "not consistent with an intention to pay [plaintiff] on a salary basis"). There are thus factual disputes as to whether Plaintiff was paid on a fixed weekly basis or a daily basis. Because there are two separate salary basis analyses depending on whether a salaried employee is paid on a weekly basis or a daily basis, *see Helix Energy Sols. Grp., Inc.*, 598 U.S. at 54–56 (describing the two paths laid out by 29 C.F.R. § 602(a) and 29 C.F.R. § 604(b)), this factual dispute must be resolved by a trier of fact in order to determine (1) which salary basis

analysis applies to Plaintiff and (2) whether Plaintiff satisfies that salary basis test.[19]

---

[19]  For example, if Defendants paid Plaintiff on a weekly basis and then had an "actual practice" or policy of reducing his salary when he did not work a full schedule, Plaintiff would be rendered a non-exempt employee under 29 C.F.R. § 602(a).  *Cf. Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 164 (2d Cir. 2008) ("Because [defendant] determined salary levels on a quarterly basis, an actual practice or a clear and particularized policy that permitted intra-quarterly reductions below the predetermined amount on the basis of quantity or quality of work performed would render plaintiff a non-salaried employee.").  Neither party contends that there was a "clear and particularized policy" that "effectively communicate[d] that deductions *will be* made in specified circumstances.'"  *Yourman v. Giuliani*, 229 F.3d 124, 129 (2d Cir. 2000) (citation omitted).  (F. Joe Dep. 132:17–24 ("We never had a set [leave] policy, but anybody who wanted to take sick days or vacation days were always allowed do.  I've always been told since I first came that if it is a sick day, [employees] always get compensated.  If it's a vacation day or personal day, depending on the situation, they were always compensated."))  According to Defendants' pay records, Plaintiff's salary was reduced on at least twenty-seven occasions.  (*See* Defs.' Pay Records.)  While "isolated incidents of deductions" are insufficient to create a genuine issue of material fact as to an employee's exempt status, *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 529 (E.D.N.Y. 2015), Defendants' reductions in this case suggest an "actual practice" of deductions from Plaintiff's salary.  *See, e.g.*, *Karropoulos*, 128 F. Supp. 3d at 529 (finding "three instances [nearly three and a half years] when the [p]laintiff's pay was docked is not sufficient to create a genuine issue of material fact that would preclude the [c]ourt from finding that the [p]laintiff was '[c]ompensated on a salary basis at a rate of not less than $455 per week.'") (fifth alteration in original) (quoting *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) (holding that four isolated incidents was not sufficient to show an "actual practice" of reducing employee salaries)); *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 522 (S.D.N.Y. 2013) (holding that "three suspensions among five employees over a period of four years is, in this case, too isolated an occurrence to suggest [d]efendants had an 'actual practice' of making unlawful deductions from the [p]laintiffs' salaries").  Thus, if Defendants did pay Plaintiff on a weekly basis, there is an additional question of whether Defendants' salary deductions amounted to an "actual practice."

By contrast, a trier of fact could find that Plaintiff was paid on a daily basis, and would thus also have to determine whether Plaintiff was "guarantee[d] . . . at least the minimum weekly required amount paid on a salary basis." 29 C.F.R. § 604(b).  Joe testified at his deposition that Plaintiff was not guaranteed a minimum salary.  (F. Joe. Dep. 139: 8–12.)  In addition, the mere fact that Plaintiff was paid more than the minimum requirement is not alone sufficient evidence that Plaintiff was guaranteed that amount.  *Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290, 302 (E.D.N.Y. 2016) (finding that "there is no evidence that plaintiff was *guaranteed*" the minimum salary, particularly considering the employer's testimony "that plaintiff did not have a guaranteed weekly minimum").  Several district courts have found that an employer has not met the salary basis test for hourly or daily rate employees absent a specific guarantee that an employee will be paid that amount.  *Erdemir v. Allstate Marble & Granite, Kitchens & Baths, Inc.*, 704 F. Supp. 3d 337, 365–66 (E.D.N.Y. 2023) (finding that an employee was not "guaranteed" a minimum salary when his "wages varied [by $165] on a week over week basis because he was paid based on the number of days he worked and the number of evening and

Accordingly, neither party has met its burden of showing that there are no disputed issues of material fact regarding whether Plaintiff's employment satisfied the salary basis test.

### 3.  Duties test

Although the Court's conclusion that there are triable issues of fact as to whether Plaintiff was paid on a salary basis is alone sufficient to deny parties' motions for summary judgment, the Court also addresses whether Plaintiff's job responsibilities meet the duties tests.

### A.  Executive exemption

"Administrative regulations classify employees as 'executive' if (1) they are '[c]ompensated on a salary or fee basis,' (2) their 'primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof,' (3) they 'customarily and regularly direct[] the work of two or more other employees,' and (4) they 'ha[ve] the authority to hire or fire other employees or' if their 'suggestions and recommendations' on personnel decisions 'are given particular weight.'" *Scott*, 954 F.3d at 510 (alterations in original) (quoting 29 C.F.R. § 541.100(a)).  The term "primary duty" means "the principal, main, major or most important duty that the employee performs" and considers factors such as:

> [T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a); *Scott*, 954 F.3d at 511–14 (applying the factors in 29 C.F.R. § 541.700(a) to analyze an employee's exempt status); *Sydney v. Time Warner Ent.-*

---

Saturday hours he worked"); *Padilla*, 176 F. Supp. 3d at 302–03 (finding that a worker who was "pa[id] based on the amount of hours he worked" each week was not "guaranteed" a minimum salary, even though he received more than the minimum salary throughout his employment). The parties do not dispute that Defendants failed to guarantee Plaintiff a minimum weekly income, and, at times, Defendants' payments did not exceed the minimum under the NYLL.

*Advance/Newhouse P'ship*, 751 F. App'x 90, 92 (2d Cir. 2018) (same) (quoting 29 C.F.R. §

541.700(a)). "[M]anagement" includes, but is not limited to:

> activities such as interviewing, selecting, and training of employees;
> setting and adjusting their rates of pay and hours of work; directing
> the work of employees; maintaining production or sales records for
> use in supervision or control; appraising employees' productivity
> and efficiency for the purpose of recommending promotions or other
> changes in status; handling employee complaints and grievances;
> disciplining employees; planning the work; determining the
> techniques to be used; apportioning the work among the employees;
> determining the type of materials, supplies, machinery, equipment
> or tools to be used or merchandise to be bought, stocked and sold;
> controlling the flow and distribution of materials or merchandise
> and supplies; providing for the safety and security of the employees
> or the property; planning and controlling the budget; and monitoring
> or implementing legal compliance measures.

29 C.F.R. § 541.102; *see Elghourab v. Vista JFK, LLC*, No. 17-CV-911, 2019 WL

2431905, at *8–10 (E.D.N.Y. June 11, 2019) (relying on 29 C.F.R. § 541.102 to determine

whether an employee's primary duty is management), *aff'd*, 818 F. App'x 63 (2d Cir. 2020);

*Brown v. Barnes & Noble, Inc.*, No. 16-CV-7333, 2018 WL 3105068, at *12 (S.D.N.Y. June 25,

2018) (analyzing management functions of employee according to applicable regulations in 29

C.F.R. § 541.102); *see also Panora v. Deenora Corp*, 467 F. Supp. 3d 38, 41 ("[F]ederal courts

evaluate New York's executive exemption by reference to [FLSA] and its attendant regulations."

(quoting *Clougher v. Home Depot U.S.A., Inc*., 696 F. Supp. 2d 285, 289 n.5 (E.D.N.Y. 2010))).

However, "[w]hether an employee is subject to a FLSA exemption 'is not determined by job title

alone.'" *Paschalidis v. Airline Rest. Corp.*, No. 20-CV-02804, 2021 WL 5013734, at *3

(E.D.N.Y. Oct. 28, 2021) (quoting *Coleman-Edwards*, 330 F. App'x at 219 (citations omitted));

*Yeh v. Han Dynasty, Inc*., No. 18-CV-6018, 2020 WL 883501, at *6 (S.D.N.Y. Feb. 24, 2020)

("[Department of Labor] regulations provide that the exempt or nonexempt status of an

employee cannot be assessed from an employee's job title alone, but instead must be determined

39

on the basis of whether the employee's salary and duties meet the requirements of the regulations." (citing 29 C.F.R. § 541.2)); *Ozawa v. Orsini Design Assocs., Inc*., No. 13-CV-1282, 2015 WL 1055902, at *3 (S.D.N.Y. Mar. 11, 2015) ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations. . . ." (alteration in original) (quoting 29 C.F.R. § 541.2)). Rather, this "question[ ] should be resolved by examining [an employee's] actual job characteristics and duties." *Myers*, 624 F.3d at 548; *Scott*, 954 F.3d at 511 ("[T]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations' defining executive and administrative employees[.]" (quoting 29 C.F.R. § 541.2)); *Mason v. Lumber Liquidators, Inc*., No. 17-CV-4780, 2019 WL 2088609, at *11 (E.D.N.Y. May 13, 2019) (recognizing that "an employer's classification of all employees in a particular job title" does not alone satisfy exemption status, but rather, courts must conduct an "individualized inquiry as to the actual job duties of each [employee]" (citing *Costello v. Kohl's Illinois, Inc*., No. 13-CV-1359, 2014 WL 4377931, at *1 (S.D.N.Y. Sept. 4, 2014))), *aff'd*, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019); *Ozawa*, 2015 WL 1055902, at *3 (same).

The Court has already determined that there is a factual dispute regarding the salary basis test. As to the second factor of the duties test — whether an employee's "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof," *Scott*, 954 F.3d at 510 (alteration in original) — there is a factual dispute regarding Plaintiff's duties and the extent to which they were managerial. The parties disagree about Plaintiff's primary responsibilities, the amount of time Plaintiff spent on exempt versus non-exempt work, and the amount of discretion Plaintiff had in performing his tasks. For example,

Defendants contend that Plaintiff conducted a significant amount of office work, including ordering products, keeping inventory checks, advertising, overseeing minor construction, calculating the point of sale system. (Defs.' 56.1 ¶¶ 32–33.) Plaintiff disputes these facts, (Pl.s' 56.1 Resp. ¶¶ 32–33), and contends that he did not conduct business on his phone or on a laptop, and only performed "minor administrative tasks on occasion," (Pl.'s 56.1 ¶ 21). According to Plaintiff, he instead bought and prepared food, sold flowers, gardened, made deliveries, and completed minor handyman tasks; he did not set the menu, choose vendors or suppliers, or set any policies. (Pl.s' 56.1 ¶¶ 18, 33.) Plaintiff contends that Cho supervised him and "controlled the terms and conditions of his employment," (*id.* ¶ 24), while Defendants state that Plaintiff "took care of everything," (S. Cho Dep. 39:5–8), and "a lot was left to Mr. Juan," (F. Joe Dep. 24:22).

The parties also disagree as to the third and fourth factors of the duties test, namely, whether Plaintiff "customarily and regularly" directed the work of two or more other employees, and whether Plaintiff had "the authority to hire or fire other employees" or if his "suggestions and recommendations" on personnel decisions were "given particular weight." *Scott*, 954 F.3d at 510. Plaintiff argues that he did not generally assign work to other employees, did not control their schedules or pay rates, and did not have the authority to discipline them. (Pl.'s 56.1 ¶¶ 28, 30, 34, 35.) Nor did he normally participate in interviewing candidates and could not hire or fire anyone without approval from Cho or Joe. (Pl.'s 56.1 ¶¶ 27, 29.) By contrast, Defendants argue that Plaintiff was the "highest-ranking employee" at Noodle Flower, and accordingly supervised the other employees' work and assigned duties to the kitchen staff, bussers, employees who helped make the bulk sauce, employees at the flower shop. (Defs.' 56.1 ¶¶ 2, 8, 25–26, 48–51.) They also contend that Plaintiff hired and fired about six employees. (*Id.* ¶¶ 9–11, 13–15, 17, 22 40.) According to Defendants, Plaintiff also oversaw employees' schedules, ensured they

arrived and clocked in, and collected their timecards for the accountant.  (*Id.* ¶¶ 2–4, 37, 39.)  He also had the authority to recommend a new hire's pay.  (*Id.* ¶¶ 23, 24.)

Neither party has satisfied its burden of showing that there are no disputed issues of material fact as to whether Plaintiff's employment satisfied the duties test to be qualified as an executive employee.

### B.    Administrative exemption

The regulations implementing the FLSA provide that an employee falls under the administrative employee exemption when (1) the employee is "[c]ompensated on a salary or fee basis" at a rate of not less than $455 per week;[20] (2) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(1)-(3); *see also Albertin v. Nathan Littauer Hosp. & Nursing Home*, No. 18-CV-1422, 2021 WL 1742280, at *10 (N.D.N.Y. May 4, 2021) ("There are three requirements to meet the administrative capacity exception: (1) the employee must earn at least $684 per week; (2) the employee's primary duty involves office or non-manual work 'directly related to the management or general business operations of the employer;' and (3) the employee's primary duty must include 'the exercise of discretion and independent judgment with respect to matters of significance.'" (citing 29 C.F.R. § 541.200(a)(1)-(3))); *Ozawa*, 2015 WL 1055902, at *3 (same); *Sethi*, 974 F. Supp. 2d at 181 (same).  Like the FLSA,

---

[20]  As of January 1, 2020, this amount has been adjusted to $684 per week.  *See* 29 C.F.R. § 541.100(a)(1).  However, as noted, the Court uses the prevailing rate at the time of Plaintiff's employment.  *See Panora*, 467 F. Supp. 3d at 41 n.3 (recognizing the increase of the salary threshold from $455 to $684 per week, but applying $455 because it was the salary threshold at the time of the plaintiff's employment); *Erdemir*, 704 F. Supp. 3d at 364 n.140 (same).

in order to fall under the NYLL administrative exemption, a plaintiff must "customarily and regularly exercise[ ] discretion and independent judgment." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.14(c)(4)(ii)(b); *see also Reiseck v. Universal Commc'ns of Mia., Inc.*, 591 F.3d 101, 105–08 (2d Cir. 2010) (conducting one combined analysis of the administrative employee exemption under both the FLSA and the NYLL because the NYLL "applies the same exemptions as the FLSA"), *abrogated on other grounds*, *Encino Motorcars*, 584 U.S. at 89; *Scarpinato v. E. Hampton Point Mgmt. Corp*., No. 12-CV-3681, 2013 WL 5202656, at \*3 (E.D.N.Y. Sept. 13, 2013) (finding that where the plaintiff's FLSA overtime claim failed because she qualified as an administrative employee under the FLSA, "her [NYLL] claim could not prevail" because the NYLL "applies the same exemptions as the FLSA to overtime pay").

The Court has already concluded that there is a material dispute regarding the salary basis test and the duties test under the executive exemption. The Court relies on largely the same facts in evaluating whether Plaintiff satisfies the duties test under the administrative exemption. Defendants testified that Plaintiff's job was largely office work related to the operations of Noodle Flower and managing the other employees. (F. Joe Dep. 152:2–9; S. Cho Dep. 19:20–25; Defs.' 56.1 ¶¶ 22–25, 32–33, 48–51.) Joe also testified that Plaintiff "never sought approval or permission to hire extra workers" or to set other employees' schedules, he "simply did[] as he saw fit." (F. Joe. Decl. ¶¶ 11–12, 16–17, 21, 23, 27.)

Plaintiff testified that his responsibilities were largely manual. (J. Pastuizaca Dep. 55:24–58:13; Pl.'s 56.1 ¶ 18, 33.) Plaintiff testified that he did not have supervisory authority, or the authority to make hiring decisions. (J. Pastuizaca Dep. 101:6–10, 103:14–105:21.)

Accordingly, neither party has met its burden of showing that there are no disputed issues of material fact as to whether Plaintiff's duties satisfied the test for an administrative exemption under the FLSA and NYLL.

Based on the foregoing analysis, the Court concludes that although Plaintiff's salary met the salary level test, there are disputed issues of material fact as to (1) whether Defendants paid Plaintiff on a salary basis and whether his salary satisfied the salary basis test and (2) whether Plaintiff's duties qualified him for either the executive or administrative exemption.  The Court therefore denies both parties' motion for summary judgment as to Plaintiff's exempt status under the FLSA and the NYLL.

### 4.   NYLL spread-of-hours and wage notice and statement claims

Because there are disputed issues of material fact as to Plaintiff's exempt status, the Court accordingly denies summary judgment since Plaintiff's spread-of-hours and wage claims depend on Plaintiff's non-exempt status.  *See* N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.2(c)(1) ("Employee also does not include any individual permitted to work in, or as: an executive, administrative or professional capacity."); *Andreyuk*, 2022 WL 4658457, at *6–10, 13 (denying summary judgment on wage notice and wage statement claims in part because the claims depend on plaintiff's exempt status, which the court decided did not warrant summary judgment because there were numerous factual disputes regarding whether plaintiff met the salary or duties tests); *Elghourab v. Vista JFK,* LLC, No. 17-CV-911, 2018 WL 6182491, at *9–10 (E.D.N.Y. Nov. 27, 2018) (denying summary judgment on a wage notice claim because that claim depends on plaintiff's exempt status, which the court decided did not warrant summary judgment because there were "disputes and uncertainty over plaintiff's day-to-day activities, level of supervision, and salary"); *Camara v. Kenner*, No. 16-CV-7078, 2018 WL 1596195, at *10 (S.D.N.Y. Mar. 29, 2018) (denying summary judgment on a wage notice claim because there were questions of fact as to whether defendant had paid all of plaintiff's wages).

## III.  Conclusion

For the foregoing reasons, the Court grants Plaintiff's cross-motion for summary

judgment as to Plaintiff's overtime claim, spread-of-hours claim, and wage notice claim for the eighteen weeks where Plaintiff was paid less than the minimum required for exempt employees under the NYLL.[21] The Court awards damages against Defendants in the amount of $27,857 to Plaintiff consisting of: (1) $10,294.50 in unpaid overtime wages; (2) $1,134 in violation of the NYLL's spread-of-hours law; (3) $5,000 in violation of the NYLL's wage notice law; and (4) $11,428.50 in liquidated damages.  Prejudgment interest shall be added to this amount, to be calculated as stated above.

As to Plaintiff's remaining claims, the Court denies Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment as to Plaintiff's (1) exempt status under the FLSA and NYLL; (2) spread-of-hours claim under the NYLL; and (3) wage notice and statement claims under the NYLL.

Dated:  February 8, 2025
      Brooklyn, New York

SO ORDERED:

_____
MARGO K. BRODIE
United States District Judge

---

[21] Plaintiff was not exempt for the following weeks of his employment: September 19, 2019; May 10, 2020; May 24, 2020: January 31, 2021 through April 18, 2021; and June 27, 2021.